UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,                  :

    -against-                                              :    S1 17 Cr. 649 (GBD)

TERRELL POLK,                                          :

               Defendant.              :

------------------------------------------------------x

### DEFENDANT TERRELL POLK'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT CERTAIN EVIDENCE

#### Preliminary Statement

Defendant Terrell Polk submits this Memorandum of Law in opposition to the government's *in limine* motion ("Govt. Mem.") to introduce at trial evidence of: (i) alleged co-conspirator statements in furtherance of a conspiracy; (ii) co-conspirators' prior arrests and bad acts related to drugs and firearms; (iii) and certain out-of-court statements; in addition, the government seeks (iv) preclusion of cross-examination of its cooperating witness ; and (v) denial of Defendant Polk's request to limit the scope of the government's ballistics evidence. As we explain herein, for the most part, the government's application should be denied.

# ARGUMENT

## POINT ONE

### THIS COURT SHOULD DENY THE GOVERNMENT *IN LIMINE* MOTION

#### A. The Government Effort To Admit "Co-Conspirator" Hearsay

The government maintains it will call one cooperating witness ("CW-1") at trial, who was allegedly a member of the drug distribution conspiracy charged in this case, and purportedly witnessed the July 25, 2015 shooting. He supposedly will testify about narcotics trafficking and violence pursued by the conspiracy. The government also intends to introduce prison phone calls recorded by the prison facility in which Polk was housed. Govt. Mem. at 3-4.

Specifically, the government intends to introduce evidence through the testimony of CW-1 relating to narcotics trafficking and related violence. *Id.* at 5-6. This of course must await trial, and possible objections at that point. The prison phone call intercepts the government intends to introduce, between Mr. Polk and other others alleged members, present a different matter. A conspirator's membership in a conspiracy is presumed to continue until he affirmatively withdraws or the conspiracy ends. *United States v. Flaharty,* 295 F.3d 182, 192 (2d Cir. 2002). Here, there is no evidence that the Polk-Smith-Corbett "conspiracy" continued after their incarceration. Indeed, it appears that the entirety of the government's evidence of conspiracy ended on August 26, 2015.

In addition, Mr. Polk is surely entitled to an instruction on withdrawal from any imagined conspiracy, or in this case non-entry into such conspiracy. *See United States v. Berger,* 224 F.3d 107, 118 (2d Cir.2000). Significantly, however, a defendant who is

2

incarcerated during the course of a conspiracy "is entitled to a jury instruction on withdrawal." *United States v. Salameh,* 152 F.3d 88, 150 (2d Cir.1998) (*per curiam* ); *see also United States v. Panebianco,* 543 F.2d 447, 454 n. 5 (2d Cir.1976) ("[W]hether an imprisonment constitutes withdrawal from the conspiracy must be decided *by the jury* in light of the length and location of the internment, the nature of the conspiracy, and any other available evidence." (emphasis added); *accord, United States v. Hunter*, No. 05-CR-188 (JG), 2008 WL 268065, at *15 (E.D.N.Y. Jan. 31, 2008*), aff'd sub nom. United States v. Payne*, 591 F.3d 46 (2d Cir. 2010), and *aff'd,* 386 F. App'x 1 (2d Cir. 2010). As a consequence it is clearly the government's burden to show that a conspiracy between these men continued after their arrest in August 2015 before any such evidence can be admitted.[1]

### B. The Government Motion To Admit Certain Uncharged Crimes As "Direct" Evidence or Rule 404 (b) Evidence Is Meritless

In this Circuit, evidence of uncharged criminal activity is not "other crimes" evidence subject to Rule 404(b)'s strictures "if it arose out of the same transaction or series of transactions as the charged offense, if it is *inextricably intertwined* with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir.2000) (internal quotation marks and citation omitted; emphasis added); *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir.1997)(same). Evidence that meets the criteria set forth in

---

[1] In addition, as expressed in our August 22, 2018, letter to the Court, should the Court permit evidence regarding the August 26, 2015 search, Defendant Polk should be entitled to present evidence that the Bronx Supreme Court dismissed all charges against him in December 2016.

3

*Carboni/Gonzalez* is considered direct or intrinsic evidence of the charged offenses, meaning the court is "not required to instruct the jury against making an improper inference of criminal propensity." *United States v. Brand,* No. 04 Cr. 194, 2005 WL 77055, at *3 (S.D.N.Y. Jan. 12, 2005); *accord, United States v. Kassir,* No. 04 Cr. 356 (JFK), 2009 WL 976821, at *7 (S.D.N.Y. Apr. 9, 2009).

However, "where it is *not manifestly clear* that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Nektalov,* 325 F.Supp.2d 3 67, 372 (S.D.N.Y.2004)(emphasis added); *accord, United States v. Midyett*, 630 F. Supp.2d 450, 460 (E.D.N.Y. 2009).

In its Memorandum of Law in support of its motion ("Govt. Mem."), the government lists one act regarding a small amount of narcotics by alleged co-defendants Jamel Moss and Kevin Corbett in May 25, 2013. *See* Govt. Mem. at 7-8. This "evidence" against Defendant Polk is foreclosed for a variety of reasons.

*First,* as the government clearly knows, Polk was in jail until March *2014.* Thus such "conspiracy evidence" is clearly inadmissible against him on that ground alone.

*Second*, the proffered evidence is not "intrinsic" or "direct" proof against Defendant Polk; and, it does not constitute direct or intrinsic proof of Defendant Polk's alleged conduct since he did not participate in any of it. Thus, none of this proof should be admitted against Defendant Polk.

Moreover, in making the determination whether the proffered evidence should be admitted as direct or intrinsic proof, courts in this circuit have uniformly required the government to establish that the proffered evidence is "part and parcel," has a "crucial connection to," or is "inextricably intertwined with," the charged crimes; or that "the

4

charged crime[s are not] straightforward and [cannot] be fully understood without reference to [the uncharged crimes]." *United States v. Newton,* No. S1 01 Cr. 635 (CSH), 2002 WL 230964, at *2-*3 (S.D.N.Y. Feb. 14, 2002)(Haight, J.)(interpreting *Carboni* and *Gonzalez*); *see also United States v. Stein,* 521 F.Supp.2d 266, 271 (S.D.N.Y. 2007)(In deciding whether uncharged conduct is "inextricably intertwined" with charged conduct—and thus admissible as direct evidence—courts have considered whether "[the] details of the uncharged transaction are *necessary to understand* the charged transaction")(emphasis added).

Thus, the government fails to satisfy this standard simply by claiming that the proffered evidence offers an historical "context" for the jury. As Judge Haight ruled in *Newton*: "The fact that [*the defendant*] may have committed similar [criminal] acts in close temporal proximity to the charged crimes furnishes an element of context, but it is certainly not crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed." Judge John Keenan, in *Kassir*, made an identical observation:

> [The government's] arguments wrongly assume that uncharged criminal activity that provides context or is relevant to the charged conduct need not be treated as other act evidence under Rule 404(b). The true test is not whether the evidence provides context or is relevant, but rather whether it meets the criteria set forth in *Gonzalez*. Underscoring this point are the decisions of numerous courts in this circuit that found it necessary to conduct Rule 404(b) analysis of uncharged criminal activity that merely provided context or was somehow relevant to the charged conduct. *See, e.g., United States v. Townsend,* No. 06 Cr. 34, 2007 U.S. Dist. LEXIS 32639 (S.D.N.Y. Apr. 30, 2007) (Keenan, J.) (conducting Rule 404(b) analysis after finding that, "although the proffered evidence is certainly relevant to show the background of the charged conspiracy, it does not appear to be inexorably intertwined." (internal quotation marks and indicators of alterations from the original omitted)); *United States v. Ferguson,* 246 F.R.D. 107, 115 (D.Conn.2007) (same); *Nektalov,* 325 F.Supp.2d at 370 (same). Therefore, to avoid Rule 404(b) analysis,

5

evidence of uncharged criminal activity must do more than provide context or be relevant; it must meet the *Gonzalez* criteria, such as by being *inextricably intertwined* with the charged conduct.

*Kassir*, at * 2 (emphasis added); *see also United States v. Dolney*, No. 04 CR 159 (NGG), 2005 WL 2129169, at *2 (E.D.N.Y. Sep. 1, 2005)("[A]lthough the Second Circuit's intrinsic evidence standard appears at first glance to be fairly broad, in practice, its usage has often been limited to instances where the intrinsic evidence is contemporaneous with the charged conduct. Here, *the two year gap* between the events covered by the proffered testimony and those charged in this case, requires that the evidence be admitted, if at all, under Rule 404(b)")(emphasis added).

Here, narcotics activity by two other individuals -- well before Polk was released from prison is unquestionably *not* inextricably intertwined with the *charged conduct*. Accordingly, such evidence should be precluded.

### C. Evidence of Narcotics Activity Is Also Inadmissible Under Rule 404(b)

Rule 404(b), which governs the admissibility of evidence concerning a defendant's other bad acts and uncharged crimes, provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Fed.R.Evid. 404(b).

Invoking Rule 404(b), the government alternatively seeks introduction of the same acts against Defendant Polk. We submit that the government's argument is without merit.

6

Our Circuit has articulated a four-part test for determining admissibility under Rule 404(b): "Evidence may be introduced under Rule 404(b) if (1) it is introduced for a proper purpose, (2) it is relevant to the charged offense, (3) its prejudicial effect does not substantially outweigh its probative value, and (4) it is admitted with a limiting instruction if requested."*United States v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007)(citing *Huddleston v. United States,* 485 U.S. 681, 691-92 (1988)). The government cannot satisfy the first three prongs of the test with respect to any of the evidence it seeks to offer.

The Second Circuit has adopted "an inclusionary approach" to Rule 404(b) evidence, precluding admission only when evidence of other bad acts is offered to demonstrate the defendant's criminal propensity. *United States v. Garcia,* 291 F.3d 127, 136 (2d Cir.2002) (internal quotation marks omitted). This inclusionary approach, however, is not unbounded and "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Figueroa,* 618 F.2d 934, 940 n. 2 (2d Cir.1980). Instead, "[t]here must be a clear connection between the prior act evidence and a disputed issue at trial." *United States v. Batista*, No. 06 CR 265 (DLI), 2009 WL 3134561, at *3 (E.D.N.Y. Sep. 23, 2009)(interpreting Circuit standard); *see also United States v. Gordon,* 987 F.2d 902, 908 (2d Cir.1993) (probative value of other bad acts "depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (citation and internal quotation marks omitted). "Rule 404(b) does not authorize the admission of any and every sort of other-act evidence," *United States v. Gordon,* 987 F.2d at 902, 908 (2d Cir. 1993); the other act must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge

7

inference advocated by the proponent of the evidence." *Id.* (citing *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987)).

Applying these standards here, it is obvious that evidence of small narcotics transactions – <u>by others</u> does not in any way prove <u>Polk's</u> "opportunity, knowledge, intent and identity." *See* Govt. Mem. at 12. Accordingly, this Court should quickly reject the government's argument.

In particular, <u>others'</u> acts do not prove Polk's opportunity, since it does not come within the usual definition. *See United States v. Maravilla,* 907 F.2d 216, 222 (1st Cir.1990) ("To show 'opportunity' is to show that the defendant had some special capacity, ability or knowledge that would enable him to commit the crime."); *United States v. Green.* 648 F.2d 587, 592 (9th Cir.1981) (Though the word ["opportunity" under 404(b) ] has been little used by the courts it evidently is intended to cover all or a part of a category called "capacity" ...").

In sum, the proffered evidence is not admissible as "intrinsic" evidence or under Rule 404(b).

### D. The Excited Utterances Should Not Be Admitted[2]

The government seeks to admit, under Rule of Evidence 803(2): the statement "gun" by a completely unknown person ("declarant-1") to someone that the government refuses to identify – before the "Store" shooting; the government also seeks to admit a second statement – "he's gone" -- by a second unidentified declarant ("declarant-2") to Victim-2 and Victim-3 during the same incident. The government's application should be rejected.

---

[2] By email to defense counsel, the government has appropriately withdrawn its argument, Govt. Mem. at 13-14, that "Victim-1's statements are admissible.

8

inference advocated by the proponent of the evidence." *Id.* (citing *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987)).

Applying these standards here, it is obvious that evidence of small narcotics transactions – <u>by others</u> does not in any way prove <u>Polk's</u> "opportunity, knowledge, intent and identity." *See* Govt. Mem. at 12. Accordingly, this Court should quickly reject the government's argument.

In particular, <u>others'</u> acts do not prove Polk's opportunity, since it does not come within the usual definition. *See United States v. Maravilla,* 907 F.2d 216, 222 (1st Cir.1990) ("To show 'opportunity' is to show that the defendant had some special capacity, ability or knowledge that would enable him to commit the crime."); *United States v. Green.* 648 F.2d 587, 592 (9th Cir.1981) (Though the word ['opportunity' under 404(b) ] has been little used by the courts it evidently is intended to cover all or a part of a category called 'capacity' ...").

In sum, the proffered evidence is not admissible as "intrinsic" evidence or under Rule 404(b).

### D. The Excited Utterances Should Not Be Admitted[2]

The government seeks to admit, under Rule of Evidence 803(2): the statement "gun" by a completely unknown person ("declarant-1") to someone that the government refuses to identify – before the "Store" shooting; the government also seeks to admit a second statement – "he's gone" -- by a second unidentified declarant ("declarant-2") to Victim-2 and Victim-3 during the same incident. The government's application should be rejected.

---

[2] By email to defense counsel, the government has appropriately withdrawn its argument, Govt. Mem. at 13-14, that "Victim-1's statements are admissible.

8

The government has made no showing of the mental capacity of the declarant-1 or declarant-2. Indeed, the government seeks to admit the excited utterances of people without knowing how good their view was; how lucid they were; whether they were in fact terrified by this scene – without affording any chance to cross-examine these individuals. Thus one court observed: "It is a condition precedent to admissibility of a statement under [Rule 803(2)] that the declarant have personally observed the events described." *United States v. Padilla*, No. S1 94 Cr. 313, 1995 WL 261513, at *4 (S.D.N.Y. May 3, 1995). Moreover, it appears that neither declarant will testify – and thus a double-hearsay dilemma develops.

At a minimum, the government should provide much greater detail of the proof it intends to introduce.

### E. The Court Should Permit Cross-Examination of CW-1 regarding His Episodes of Domestic Violence

The government seeks to preclude the defense from cross-examining CW-1 regarding his many arrests for domestic violence. It is respectfully submitted that his arrests in January 12, 2016 and May 11, 2016, *see* Govt. Mem. at 18, as well as his assault on a woman on June 26, 2015 -- all of which we believe were done while CW-1 was on supervised release – are admissible because they are reflective of his dishonesty. In particular, each of the three judgments entered by this court in CW-1's case contain the standard provisions that CW-1 that he "[s]hould notify the probation officer within seventy-two hours of being arrested…" It is our belief that CW-1 failed to do so, just as he failed to obey the provision that he should "not possess a firearm, ammunition," etc."

9

All of these willing failures by CW-1 to comply with the requirements under supervised release plainly go the question of his character for "untruthfulness" and as such are subject to cross-examination.

### F. Defendant Polk Adheres To His Earlier Argument Regarding The Weight To Be Given By The Jury to Detective Fox's Testimony

Defendant Polk is not seeking a *Daubert* hearing but the defendant certainly retains the right to *voir dire* the government's its expected expert before he is approved to testify. Moreover, Defendant Polk adheres to his earlier view respecting standards and the weight to be given, or not given, Detective Fox's testimony, as expressed in Judge Rakoff's opinion in *United States v. Glynn*, 578 F. Supp.2d 567, 574 (S.D.N.Y. 2008) that "the *ballistics examiners* in [ ] cases would be permitted to testify only *that a firearms match was 'more likely than not,'* and thereby not "overstating the capacity of the methodology to ascertain matches,"), as well as the cautionary note expressed in *United States v. Gil*, 14 Cr. 721 (JFK), *aff'd*, 680 Fed. App'x 12, at *14 (2d Cir. 2017)(noting that "[t]he district court did so communicate to the jury that ballistics is a *'subjective inquiry,' which could not fairly be referred to as 'scientific,' or 'statistically certain.'* ")(emphasis added).

10

## CONCLUSION

For the foregoing reasons, and as expressed in our earlier letter, the government's *in limine* motion should be denied.

Dated: New York, New York
       September 4, 2018

                                                       Respectfully submitted,

                                                       **RICHARD B. LIND, ESQ.**

                                                       575 Lexington Avenue
                                                       New York, NY 10022
                                                       Attorney for Defendant
                                                       Terrell Polk