UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

UNITED STATES OF AMERICA,

                       Plaintiff,

    -against-

TERRELL POLK,

                       Defendant.

------------------------------------- x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: FEB 2 5 2020

**MEMORANDUM DECISION AND ORDER**

17 Crim. 649 (GBD)

GEORGE B. DANIELS, United States District Judge:

On October 23, 2017, Defendant Terrell Polk was arrested pursuant to a Sealed Indictment. The operative four-count Superseding Indictment charged Defendant with conspiracy to possess and distribute marijuana and crack cocaine, possession and use of a firearm, and possession of ammunition by a felon. (Superseding Indictment, ECF No. 67.) Trial commenced on September 10, 2018, during which the Government presented substantial evidence against Defendant, including testimony from a former member of Defendant's crew, Cicero Williams. During his direct examination at trial, Williams testified about Defendant's involvement in the narcotics conspiracy and shootings and answered the Government's questions regarding his personal criminal record. (*See* Tr. of Trial ("Tr."), at 204:11–244:14; 255:8–365:12; 431:14–435:23.) After hearing all of the evidence, the jury found Defendant guilty of all four counts on September 13, 2018. Defendant previously moved this Court to vacate his conviction on Counts One and Four of the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 29 and Count Three pursuant to Federal Rule of Criminal Procedure 33, (*see* Notice of Mot., ECF No. 109; Post-Trial Mem. of Law in Supp. of Def. Polk's Mot. to Suppress Evid., ECF No. 110). This Court denied that motion on January 10, 2019, (Mem. Decision and Order, ECF No. 128).

Subsequently, on May 20, 2019, the Government wrote a letter to Defendant, apprising him that on December 6, 2018, after the jury had entered its verdict, an individual cooperating with the Government in the hopes of obtaining a cooperation agreement in an unrelated case (the "Cooperator") stated that multiple sources had informed him that Williams was one of the men responsible for the murder of an individual named Frank Jones, and adding that "[t]he Government is not aware of any other information or evidence connecting Williams to the murder." (Def. Terrell Polk's Mem. of Law in Supp. of Setting Aside the Verdicts and Granting a New Trial ("Mem. in Supp."), Ex. B (May 20, 2019 Letter ("Government Letter")), ECF No. 159-1.)[1] Notably, Cooperator was incarcerated at the time of Jones' death and therefore could not and cannot confirm with firsthand knowledge who was involved in Jones' murder. (*See* Government Letter.) Williams did not mention anything about Jones' murder at trial when asked about his prior illegal activity, nor did he ever tell the Government that he was involved with the murder, despite testifying that he disclosed to the Government all of the crimes he has ever committed. (*See* Tr. at 358:21–359:18).[2] Following its discussion with Cooperator, the Government met with Williams on May 15, 2019 and asked him about his possible involvement in Jones' murder. Williams asserted that he did not murder Jones, nor was he even present at the time of the murder. (*See* Government Letter.)

---

[1] Neither party presents much information as to the identity of Jones or the apparent circumstances of his death, other than the fact that he was killed on May 24, 2008 near 165th Street and Ogden Avenue in Bronx, New York. (*See* Government Letter; Gov't's Opp'n to Def.'s Mot. for a New Trial, ECF No. 165, at 5.) Based on the information included in the moving papers and the Government's May 20, 2019 letter, it does not appear that Jones is in any way related to the case in which Defendant was tried.

[2] Williams' testimony during the Government's direct examination is nearly entirely comprised of Williams' discussion of his prior illegal activity and involvement with the conspiracy. (*See* Tr. at 204:11–244:14; 255:8–365:12; 431:14–23.)

2

Before this Court is Defendant's December 9, 2019 motion to set aside the judgments and grant a new trial pursuant to Federal Rule of Criminal Procedure 33, or at a minimum, to order an evidentiary hearing, based on the "revelation" Williams may have been involved in Jones' murder. (*See* Notice of Mot., ECF No. 162; Mem. in Supp, ECF No. 159.) Defendant's motion is DENIED.

## I. LEGAL STANDARDS

Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Because "[t]he grant of a Rule 33 motion requires 'a real concern that an innocent person may have been convicted[,]'" *see United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (citing *United States v. Ferguson*, 246 F.3d 129, 134 (2d. Cir. 2001)), "[t]he standard applied is whether 'it would be a manifest injustice to let the guilty verdict stand[,]'" *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (citing *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007)). District courts are directed to grant Rule 33 motions "sparingly and in the most extraordinary circumstances." *Ferguson*, 246 F.3d at 134 (citation and quotation marks omitted). Accordingly, the court must satisfy itself that the jury's verdict is supported by "competent, satisfactory and sufficient evidence," *id.*, and in analyzing the evidence at trial, the court "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir. 1982), *cert. denied*, 459 U.S. 1174 (1983) (citation omitted). A trial court may only disregard a witness's testimony where it is "patently incredible or defies physical realities[.]" *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

When a defendant's Rule 33 motion relies upon the argument that newly discovered evidence demonstrates that a testifying witness committed perjury, the Second Circuit has held that the "threshold inquiry is whether the evidence demonstrates that the witness *in fact* committed

3

perjury." *United States v. White*, 972 F.2d 16, 20 (2d Cir. 1992) (emphasis added). Even if it is proven that a testifying witness lied at trial, however, this alone does not necessarily entitle a defendant to a new trial. *Id.* at 22. Indeed, the Second Circuit applies different standards depending on whether the Government was aware of the perjury prior to the conclusion of the trial. The Court has consistently held that "if the prosecution was not aware of the perjury [prior to the conclusion of the trial], a defendant can obtain a new trial only where the false testimony leads to 'a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" *United States v. Stewart*, 433 F.3d 273, 296–97 (2d Cir. 2006) (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)).

## II. DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 33 OR AN EVIDENTIARY HEARING IS DENIED

Defendant has not met his burden under Rule 33 for a new trial. Defendant's sole argument is that had the jury heard evidence regarding Williams' possible involvement in Jones' murder, it would have reached a different verdict because "Williams' testimony was the backbone of the government's evidence," (Def. Terrell Polk's Reply Mem. of Law in Supp. of Setting Aside the Verdicts and Granting a New Trial, ECF No. 167, at 4), and this evidence demonstrates Williams' bias because he had a "motive to tailor his testimony to . . . the government's theory of prosecution out of concern of being exposed to a potential life sentence." (*Id.* at 3–4.)

Defendant's arguments are without merit. Defendant attempts to place a strong emphasis on Williams' testimony by calling it "material," (*see* Mem. in Supp. at 1, 5, 7), and characterizes Williams as "the sole witness who provided any testimony at all concerning Polk's alleged role and responsibilities in the charged conspiracy." (*See id.* at 6.) However, even if the jury chose to ignore Williams' testimony altogether, the evidence presented at trial against Defendant was overwhelming. To briefly summarize, the evidence included surveillance video of Defendant

4

during the shootings; audio recordings of phone calls Defendant made from prison in which he discussed guns and disputes with rivals; information extracted from a cell phone linking Defendant to his co-conspirators; witness testimony from a victim of one of the shootings; a detective who examined the bullets and casings found at the scenes of the shootings; a probation officer who located narcotics in Defendant's bedroom; a police officer who recovered a loaded gun from Defendant's car; and a DNA expert who matched Defendant's DNA to that located in the vehicle used during the shootings.

Defendant relies upon Cooperator's entirely unconfirmed and uncorroborated statements in support of a theory of bias that is wholly unfounded. Indeed, Defendant essentially assumes that Williams or anyone in his position would lie to the Government to avoid penalties for his illegal actions but provides no evidence to demonstrate that this has actually occurred. Further, it is not as though the Government provided the jury with an immaculate image of Williams—nearly his entire direct examination is riddled with references to thorough details of his involvement with the conspiracy and admissions of drug use and violent crimes, (*see, e.g.*, Tr. at 204:4–207:16 (admitting to selling drugs, possessing handguns, and committing shootings)). Even having heard this, the jury still convicted Defendant. It is therefore unclear what benefit Defendant believes Williams could have gained by hiding his involvement, if any, in Jones' murder, and it is similarly unclear why Defendant believes that hearing evidence of Williams' additional prior illegal activities would have caused the jury to reach the opposite verdict.

Moreover, Defendant's reliance on Second Circuit case law is misplaced. Defendant depends upon cases wherein the Court granted a defendant's motion for a new trial based on evidence that a testifying witness had committed perjury. (*See* Mem. in Supp. at 7–8.) In both of the Second Circuit cases on which Defendant relies, however—and notably, as Defendant himself

indicates in his brief—the court indicated that the perjuring witness' testimony was crucial to the Government's case, creating doubt as to whether the verdict would have been different had the jury known all of the relevant facts about the witness. (*See id.* at 7 ("In *United States v. Seijo*, . . . as the Second Circuit noted, [the witness'] trial testimony constituted the 'essence' of the government's drug conspiracy and distribution case against Seijo." (quoting *United States v. Seijo*, 514 F.2d 1357, 1358 (2d Cir. 1975))); *see also id.* at 8 ("The Second Circuit [in *United States v. Wallach*] observed that this witness' 'testimony was essential to the government's case; indeed he tied all the pieces together.'" (quoting *United States v. Wallach*, 935 F.2d 445, 458 (2d Cir. 1991))).) Here, not only was William's testimony corroborated by other evidence, which was not true of the perjuring witness' testimony in *Seijo*, but the jury's verdict was not dependent *solely* on whether it found Williams to be credible. Even disregarding Williams' testimony, the Government's considerable and significant evidence against Defendant stood for itself, and Defendant therefore has not demonstrated that absent Williams' testimony, the jury would not have convicted him.

Finally, and consistent with the above, there is no reason for this Court to hold an evidentiary hearing on this issue. First, Defendant provides no apparent reason for this Court to give more credence to Cooperator's unconfirmed accusations than to Williams' numerous consistent statements—which he made both under oath and privately to the Government—regarding his non-involvement in Jones' murder. It is unlikely that holding an evidentiary hearing on the matter would result in the discovery of any evidence that Williams' statements are false, or that asking Williams about his involvement for a third time would cause him to answer differently. Second, as described above, even assuming, *arguendo*, that this Court held an evidentiary hearing and Defendant were able to prove that Williams had lied under oath about his involvement in

6

Jones' murder, it would not demonstrate that the jury might have reached a different verdict without Williams' testimony.

### III. CONCLUSION

Defendant's motion for a new trial, (ECF No. 162), is DENIED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      February 25, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge